[Cite as *In re D.C.*, 2018-Ohio-163.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 105433

# IN RE: D.C.

# Minor Child

## JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 16100727

**BEFORE:** Stewart, P.J., Boyle, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 18, 2018

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

John T. Martin
Sarah E. Gatti
Assistant Public Defenders
310 West Lakeside Avenue, Suite 200
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Kristen L. Sobieski
Jillian J. Snyder
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

**Guardian Ad Litem**

Michael B. Telep
4438 Pearl Road
Cleveland, OH 44109

MELODY J. STEWART, P.J.:

{¶1} The juvenile court adjudicated appellant D.C. delinquent for committing acts which, if committed by an adult, would constitute the crimes of rape, kidnapping, and gross sexual imposition. The issues raised in this appeal concern the sufficiency and weight of the evidence, equal protection, the admission of irrelevant evidence, allied offenses, and ineffective assistance of counsel.

## I. Sufficiency of Evidence

{¶2} The first assignment of error complains that there was insufficient evidence to prove that D.C. compelled the victim to engage in sexual conduct. The victim testified that D.C. grabbed the victim's hand and "drove" it "into my bottom." D.C. maintains that testimony about a hand being driven into a person's "bottom" did not establish penetration sufficient to prove rape.

{¶3} We apply the same standard of review for questions involving the sufficiency of the evidence in juvenile delinquency adjudications as we do for adult criminal defendants: we view the evidence most favorably to the state to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *In re Washington*, 81 Ohio St.3d 337, 339, 691 N.E.2d 285 (1998); *In re J.S.*, 8th Dist. Cuyahoga No. 102800, 2015-Ohio-4990, ¶ 13.

{¶4} The state charged D.C. with committing an act that, if committed by an adult, would constitute the offense of rape under R.C. 2907.02(A)(2). That statute states that no person shall engage in sexual conduct with another when the other person is less than thirteen years of age. The phrase "sexual conduct" is defined as, among other things, "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). The sexual conduct need not be personally accomplished by the defendant — a defendant can be found guilty of rape even though he did not personally insert an object into a victim "'if he caused the penetration to be committed by an innocent agent.'" *State v. Ludwick*, 11th Dist. Ashtabula No. 2002-A-0024, 2004-Ohio-1152, ¶ 58, quoting Lafave & Scott, *Criminal Law*, Section 6.6(a), at 570 (2d Ed.1986).

{¶5} The victim, who was eight years old at the time the offense occurred (he was 12 years old by the time of trial), gave the following testimony:

Q: Okay. And what did he make you do with your finger?

A: He drove my hand with his own hand.

Q: Where?

A: At my rear. He drove my hand to my rear, and then —

Court: He drove your hand into what, into your rear?

A: He held my hand and he held it up to my bottom, and then —

Court: Into your bottom?

A: Into my bottom.
Court: Okay.

**{¶6}** Child victims tend to have a limited understanding of human physiology. This fact and the tendency of parents to have their children use euphemisms for intimate parts of the body make it difficult to know exactly what children mean when they give testimony about certain sexual conduct. The inherent imprecision of euphemisms for intimate body parts becomes an issue for purposes of anal rape. "If the evidence shows that the defendant made contact only with the victim's buttocks, there is not sufficient evidence to prove the defendant guilty of the crime of anal rape." *State v. Wells*, 91 Ohio St.3d 32, 2001-Ohio-3, 740 N.E.2d 1097.

**{¶7}** In cases finding sufficient proof of anal penetration, victims have given testimony showing actual penetration. *See, e.g.*, *State v. Landers*, 2d Dist. Greene No. 2015-CA-74, 2017-Ohio-1194, ¶ 79 (victim testified that "penis went 'in' her 'butt' and went into her 'butthole,' but not all the way"); *State v. Phillips*, 6th Dist. Lucas No. L-09-1149, 2010-Ohio-2577, ¶ 58 (victim testified she felt what she believed was fingers "in my bottom" and answered affirmatively when asked if "fingers in her bottom meant your butt where you go to poop out of?"); *State v. Molen*, 2d Dist. Montgomery No. 21941, 2008-Ohio-6237, ¶ 31 (victim testified that defendant shoved something "up his butt" and that what had been put in his butt was "tickling [his] stomach"). That kind of evidence is not present in this case.

**{¶8}** The victim's testimony did not establish what he meant by his "bottom." Nor does the testimony indicate that penetration of the anal opening occurred. We acknowledge that the victim testified that D.C. drove his hand "into" his bottom, but without additional context, we cannot conclude that the word "bottom" meant anal opening as opposed to merely between the cheeks of the victim's buttocks.

**{¶9}** We are aware that it can be difficult to elicit from a child victim the kind of specificity needed to prove the penetration required to establish an anal rape. But as this testimony stands, the essential element of anal penetration was not proven, despite the state's contention otherwise. We have no choice but to conclude that the state's evidence was insufficient to establish penetration of the anal opening. The court erred by adjudicating D.C. delinquent of rape.

**{¶10}** We agree with D.C., however, that the evidence is sufficient to justify a finding on the lesser included offense of gross sexual imposition under R.C. 2907.05(A)(4). That section states that no person shall have sexual contact with another when the other person is less than thirteen years of age. "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the * * * buttock * * * for the purpose of sexually arousing or gratifying either person." The evidence showed that D.C. forced the victim to touch his own buttock for the purpose of sexual arousal. We therefore sustain this assignment of error and find D.C. delinquent of gross sexual imposition.[1]

---

[1] The facts do not support a finding of guilt on the lesser included offense of attempted rape

## II. Manifest Weight of the Evidence

**{¶11}** The second and fourth assignments of error complain that the delinquency adjudication is against the manifest weight of the evidence. Given our holding that there was insufficient evidence to sustain the rape adjudication, D.C.'s argument with respect to rape is moot. *See* App.R. 12(A)(2)(c). The remainder of the manifest weight of the evidence assignment of error is that the victim was inherently unbelievable because he admitted to lying about various allegations regarding the charges in this case that he made to his parents and the police.

**{¶12}** We preface our discussion here by noting that D.C. is not challenging the weight of the evidence supporting any of the individual counts for which he was adjudicated delinquent. Instead, he offers a general argument that the victim was inherently unbelievable given that he freely admitted lying to the police and his father when divulging the abuse. For example, the victim told the police that D.C. made him put his penis in D.C.'s "butt," but testified at trial "[t]hat was a lie. I never did that." The victim also told the police that D.C.'s brother exposed his private parts to him, but at trial testified that "[t]hat never happened" and that "it wasn't the truth." The victim told the police that he did not wish to press charges against D.C., but claimed at trial that he lied about that at his mother's urging. The victim also admitted that he lied about telling his father's girlfriend that his friend's father had shown him "pornographic material involving young boys."

---

because there was no evidence that D.C. was attempting to force the victim to penetrate his own anus.

{¶13} Undoubtedly, the victim's admissions undermined his credibility. And it is difficult to accept the state's argument that the victim somehow rehabilitated what he described as his "lying habits" with the assertion that "every day I always try to tell the truth." Nevertheless, it fell to the trial judge to assess the victim's overall credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus (the weight of the evidence and credibility of witnesses are matters primarily for the finder of fact).

{¶14} The court plainly found aspects of the victim's testimony credible. There was a basis for this. The victim's father testified that the manner in which the victim broke down emotionally when divulging the nature of the acts perpetrated against him seemed to be cathartic. And there were points in the victim's testimony where he became emotional in a way that the court could have found belied any assertion that they were contrived. The trial judge was in the better position to assess the credibility of the witnesses, and for that reason we must defer to the trier of fact. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 146. That reasonable people might have viewed the victim's lies more critically is not a basis for finding that the trial judge lost his way by finding the victim credible enough to prove the allegations made against D.C.

III. Equal Protection

{¶15} The state charged D.C. with four counts of gross sexual imposition under R.C. 2907.05(A)(4). He maintains that, because he was only 11 years old at the time he engaged in the acts with the victim and was himself a child, he was thus a victim of sexual molestation under authority of *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, 950 N.E.2d 528, where the syllabus states: "R.C. 2907.02(A)(1)(b) is unconstitutional as applied to a child under the age of 13 who engages in sexual conduct with another child under 13."

{¶16} The problem with applying *D.B.* to this case is that *D.B.* dealt with statutory rape under R.C. 2907.02(A)(1)(b) and this assigned error deals with gross sexual imposition under R.C. 2907.05(A)(4). The court in *D.B.* found application of the statutory rape statute "unconstitutionally vague" when both the alleged rapist and the victim are under the age of 13 because the want of a culpable mental element for the offense meant that "each child is both an offender and a victim[.]" *Id.* at ¶ 24. In other words, because the statute required no showing of force or aggression in order to charge the offense, the distinction between an offender and victim "breaks down" when both are under the age of 13 and the decision to prosecute one child over the other results in discriminatory enforcement. *Id.*

{¶17} We have held that *D.B.* does not apply to the offense of gross sexual imposition under R.C. 2907.05(A)(4) because that statute defines the offense in terms of "sexual contact," where the touching is for the purpose of sexually arousing or gratifying either person. *In re K.A.*, 8th Dist. Cuyahoga Nos. 98924 and 99144, 2013-Ohio-2997, ¶ 10. We concluded that the offense of statutory rape, which contains no element of mental culpability, is different from the offense of gross sexual imposition, which does require a person to act with "purpose" to achieve sexual gratification. *Id.* at ¶ 11. We thus found no arbitrary and discriminatory enforcement involved when the state charged a child who was under the age of 13 with gross sexual imposition under R.C. 2907.05(A)(4). *Id.* at ¶ 12.

{¶18} D.C. acknowledges our decision in *K.A.*, but argues that it was wrongly decided and that we should overrule it. We decline to do so, and note that several other appellate districts in this state have followed *K.A.* or have reached similar conclusions. *See, e.g., In re B.O.*, 6th Dist. Huron No. H-16-022, 2017-Ohio-43, ¶ 11; *In re M.B.*, 5th Dist. Ashland No. 15-COA-028, 2016-Ohio-4780, ¶ 83; *In re T.A.*, 2d Dist. Champaign Nos. 2011-CA-28 and 2011-CA-35, 2012-Ohio-3174, ¶ 26 (offense of gross sexual imposition under R.C. 2907.05(A)(4) "permits ready differentiation between victim and offender"); *In re D.S.*, 10th Dist. Franklin No. 15AP-487, 2016-Ohio-2810, ¶ 15; *In re K.C.*, 2015-Ohio-1613, 32 N.E.3d 988, ¶ 13 (1st Dist.).

IV. Irrelevant Evidence

**{¶19}** During trial, the state asked both D.C. and his mother questions regarding D.C.'s brother's status as sexual offender registrant. D.C. argues that this evidence was irrelevant because there was no evidence that the brother was present when any of the offenses were committed. He maintains that the state used the evidence to improperly suggest that the brother's conduct adversely reflected D.C.'s character.

**{¶20}** The state maintains that D.C. opened the door to testimony about the brother being a sexual offender registrant because his mother, who testified for his defense, was the first person to mention it. This is not true. During redirect-examination of D.C. by the state, the assistant prosecuting attorney asked the victim why he lied to the police when claiming that D.C.'s brother exposed himself. The victim replied, "I just thought that [his mother] wanted me to say something about [the brother] because she told me that [the brother] had been a registered sex offender."

**{¶21}** Nevertheless, D.C. did not object to this testimony, so he forfeited all but plain error. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 44. We find no plain error sufficient to conclude that a manifest miscarriage of justice occurred. *See State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶22}** First, during recross-examination of the victim, defense counsel asked the victim whether he said the things he said to the police because his mother "told you a lot of things to tell the police, didn't she?" The victim responded, "[s]he only told me a few things about how [D.C.'s] family is above the law and how [the brother] is a registered sex offender * * *." So rather than attempt to minimize any mention of the brother's status as a sexual offender registrant, D.C. addressed it directly. Second, the testimony did not prejudice D.C. because nothing in the record indicates that the court viewed testimony about D.C.'s brother's status as a sexual offender registrant as somehow reflecting on D.C. We assume that in a bench trial a judge does not use evidence for any improper purpose. *State v. Murray*, 8th Dist. Cuyahoga No. 91268, 2009-Ohio-2580, ¶ 25. D.C.'s argument is in essence a claim that the trial judge imputed the brother's status as a sexual offender registrant to D.C. Even without the presumption that the court did not do so, we find it difficult to accept an argument that the court imputed acts committed by a registered sex offender to his 11-year-old brother. Without a record showing that the court did impute the brother's conduct to D.C., we have no basis for finding that any miscarriage of justice occurred.

## V. Allied Offenses

**{¶23}** The complaint alleged eight counts of gross sexual imposition: four counts were alleged violations of R.C. 2907.05(A)(4); four counts alleged violations of R.C. 2907.05(A)(1). D.C. argues that all the offenses involved sexual contact such that a single act of sexual contact satisfied the elements of both R.C. 2907.05(A)(1) and (A)(4).

He thus maintains that the victim suffered the same injury and the counts should have merged for disposition.

{¶24} Some of the gross sexual imposition counts alleged the same type of conduct in what the victim called the "try not to laugh" game. This "game" involved D.C. and the victim rubbing their clothed genitals against the other in various positions of simulated sexual intercourse. The victim testified that they played the game "five or six times." In addition, the victim testified that on two occasions, D.C. made the victim touch his own penis. In total, these were as many as eight separate acts. The eight acts were committed separately, so they do not merge. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25 (offenses do not merge if "the offenses were committed separately[.]").

## VI.   Ineffective Assistance of Counsel

{¶25} D.C. raises two claims of ineffective assistance of counsel: that on cross-examination of the victim, trial counsel brought up evidence of rape that the state failed to offer and that trial counsel failed to object to hearsay.

{¶26} In direct examination of the victim, the state elicited no testimony to prove the rape count. In cross-examination of the victim, defense counsel played a recording of the victim's statement to the police and asked the victim whether he told the police that D.C. "made you stick your finger somewhere?" The victim replied that he did tell the police that. Defense counsel then asked for specifics on what happened, causing the victim to testify that D.C. drove his hand into his own bottom.

**{¶27}** The state maintains that this questioning was a matter of trial strategy by defense counsel. We can conceive of no trial strategy where defense counsel willingly elicits testimony tending to prove the state's case. But we need not address this argument further because we have vacated the adjudication for rape and modified it to an adjudication for gross sexual imposition. The claim, therefore, is moot.

**{¶28}** The remaining question is whether defense counsel was ineffective for failing to object to hearsay offered by the victim's father. This included statements that the victim had been more "open" about discussing with the father what happened to him, that the victim had "always said the same thing to me" about what happened, and that to the extent the victim was reticent about sharing what happened with this father, the victim opened up to his counselors and that his counselors told the father that what he said to them "always coincided."

**{¶29}** Even if we assume without deciding that defense counsel should have objected to the statements, we find no prejudice sufficient to warrant reversal. The court's adjudication found support in otherwise properly admitted evidence. There is no reasonable probability that, but for counsel's error, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶30}** Judgment affirmed in part, reversed in part, and modified.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court — juvenile division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY