[Cite as *In re A.M.*, 2021-Ohio-432.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

        A.M.,

CASE NO. 9-20-23

DELINQUENT YOUTH.

O P I N I O N

---

**Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2018 DL 00383**

**Judgment Affirmed**

**Date of Decision: February 16, 2021**

---

APPEARANCES:

    *Lauren Hammersmith* **for Appellant**

    *Nathan R. Heiser* **for Appellee**

**SHAW, J.**

{¶1} Delinquent child, A.M., appeals the June 3, 2020 judgment of the Marion County Court of Common Pleas, Family Division, adjudicating him delinquent of one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and one count of importuning in violation of R.C. 2907.07(A), both third degree felonies if committed by an adult. On appeal, A.M. argues that his adjudication as a delinquent child for gross sexual imposition violates his constitutional rights to due process and equal protection. A.M. also argues that the trial court erred in overruling his motion to suppress.

*Relevant Facts and Procedural History*

{¶2} On August 3, 2018, a deputy from the Marion County Sheriff's Office filed a complaint alleging A.M. committed one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and one count of importuning in violation of R.C. 2907.07(A), both third degree felonies if committed by an adult. The complaint arose from allegations that 12 year old A.M. had sexual contact with J.E., a six year old neighbor. A.M. subsequently appeared before the magistrate and entered a denial to the allegations listed in the complaint.

{¶3} On December 12, 2018, A.M. filed a motion to suppress the statements he made to a deputy during a June 19, 2018 interview at the Sheriff's department. The State filed a memorandum in opposition to A.M.'s motion to suppress.

{¶4} On December 19, 2018, the magistrate conducted a hearing on A.M.'s motion to suppress. At the hearing, the magistrate heard testimony from A.M.'s parents, A.M., and the deputy who interviewed A.M.

{¶5} On January 8, 2019, the magistrate issued an "order" denying A.M.'s motion to suppress. Specifically, the magistrate determined that A.M. was not in custody during the interview and that A.M. had voluntarily made his statements to law enforcement. A.M. filed a motion to set aside the magistrate's decision denying his motion to suppress, which was subsequently overruled by the trial court.

{¶6} On April 9, 2019, A.M. withdrew his denial of the allegations in the complaint and entered pleas of no contest. The magistrate accepted A.M.'s no contest pleas and adjudicated him a delinquent child of the allegations in the complaint.

{¶7} On August 5, 2019, the magistrate held a dispositional hearing and on August 6, 2019 the magistrate issued a dispositional "report" recommending that A.M. be committed to the legal care and custody of the Ohio Department of Youth Services ("DYS") for a minimum of six months. The magistrate further recommended that the DYS commitment be suspended and that 18 months of community control sanctions be imposed by the trial court, including 90 days in detention, with those 90 days suspended conditioned on A.M.'s compliance with his community control sanctions.

{¶8} On August 6, 2019, the trial court issued a judgment entry of disposition adopting the magistrate's recommendations.

{¶9} A.M. filed an appeal of the trial court's disposition. This Court determined that the trial court's August 6, 2019 judgment entry of disposition was not a final appealable order and dismissed the appeal. *See In re: A.M.,* 3d Dist. No. 9-19-54, 2020-Ohio-2666.

{¶10} On June 3, 2020, upon remand, the trial court issued a judgment entry adjudicating A.M. delinquent of one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and one count of importuning in violation of R.C. 2907.07(A), both third degree felonies if committed by an adult. The trial court also entered a disposition placing A.M. on community control sanctions for 18 months and ordering him to successfully complete sex offender treatment. The trial court imposed upon A.M. 90 days of detention and a minimum of six months in the Department of Youth Services ("DYS"), all suspended conditioned upon his compliance with his community control sanctions.

{¶11} A.M. filed an appeal from the trial court's June 3, 2020 judgment, asserting the following assignments of error for our review.

### ASSIGNMENT OF ERROR NO. 1

**A.M. WAS DENIED HIS RIGHT TO DUE PROCESS AND EQUAL PROTECTION OF THE LAWS WHEN HE WAS ADJUDICATED DELINQUENT OF R.C. 2907.05(A)(4), FOR AN OFFENSE COMMITTED WHEN HE WAS UNDER THE**

**AGE OF THIRTEEN AND A MEMBER OF THE CLASS PROTECTED BY THE STATUTE. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.**

**ASSIGNMENT OF ERROR NO. 2**

**THE MARION COUNTY JUVENILE COURT ERRED AS A MATTER OF LAW AND VIOLATED A.M.'S CONSTITUTIONAL RIGHTS WHEN IT DENIED HIS MOTION TO SUPPRESS, EVEN THOUGH HE DID NOT VOLUNTARILY WAIVE HIS *MIRANDA* RIGHTS. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.**

*First Assignment of Error*

{¶12} In his first assignment of error, A.M. argues that his adjudication as a delinquent child for gross sexual imposition violated his constitutional rights because the application of the statute is unconstitutionally vague. Specifically, A.M. asserts that R.C. 2907.05(A)(4) is unconstitutional under these circumstances when the offender is under the age of 13 and is also a member of the class protected by the statute.

*Standard of Review*

{¶13} At the outset we note that A.M. failed to raise this issue during the trial court proceedings. "Constitutional issues apparent at the time of the trial are waived unless brought to the attention of the trial court." *In re J.J.*, 6th Dist. Erie No. E-11-018, 2012-Ohio-2550, ¶ 10. Our review of A.M.'s assignment of error is,

therefore, limited to plain error. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.*, citing *Long* at paragraph two of the syllabus.

*Statutory Authority*

{¶14} A.M. was adjudicated delinquent of gross sexual imposition in R.C. 2907.05(A)(4), which states in relevant part:

> **(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:**
>
> **\* \* \***
>
> **(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.**

{¶15} Revised Code Section 2907.01(B) defines "sexual contact" to mean "any touching of an erogenous zone of another, including without limitation the

thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose* of sexually arousing or gratifying either person." (emphasis added).

*Analysis*

{¶16} In arguing that R.C. 2907.05(A)(4) is unconstitutionally vague as applied here, A.M. compares this case to *In re D.B.*, in which the Supreme Court of Ohio found R.C. 2907.02(A)(1)(b), the statute setting forth the offense of statutory rape, to be unconstitutionally vague as applied to an offender under the age of 13. *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, ¶ 24. In that case, 12 year old D.B. was adjudicated delinquent for having violated R.C. 2907.02(A)(1)(b), which prohibits a person from engaging in *sexual conduct* with another when "[t]he other person is less than 13 years of age, whether or not the offender knows the age of the other person." Both D.B. and the victim were under 13 years old.

{¶17} The Supreme Court of Ohio found that "[a]s applied to children under the age of 13 who engage in *sexual conduct* with other children under the age of 13, R.C. 2907.02(A)(1)(b) is unconstitutionally vague because the statute authorizes and encourages arbitrary and discriminatory enforcement." *Id*. at ¶ 24 (emphasis added). It explained that "[w]hen an adult engages in sexual conduct with a child under the age of 13, it is clear which party is the offender and which is the victim. But when two children under the age of 13 engage in sexual conduct with each other,

each child is both an offender and a victim, and the distinction between those two terms breaks down." *Id*.

{¶18} The Supreme Court of Ohio further determined that the application of the statutory rape statute violated D.B.'s rights to equal protection and that under the plain language of the statute "every person who engages in sexual conduct with a child under the age of 13 is *strictly liable* for statutory rape, and the statute must be enforced equally and without regard to the particular circumstances of an individual's situation." *In re J.T.*, 3d Dist. Paulding No. 11-17-03, 2018-Ohio-457, ¶ 18, citing *D.B.*, *supra*. (Emphasis Added). The Supreme Court determined that because D.B. and the victim were both under the age of 13, "they were both members of the class protected by the statute, and both could have been charged under the offense. Application of the statute in this case to a single party violates the Equal Protection Clause's mandate that persons similarly circumstanced shall be treated alike." *D.B.*, *supra,* at ¶ 24.

{¶19} Since the Supreme Court's decision in *D.B.*, several appellate districts, including this one, have addressed arguments similar to A.M.'s on appeal comparing the statutory rape statute, R.C. 2907.02(A)(1)(b), to the gross sexual imposition offense set forth in R.C. 2907.05(A)(4). All of these courts have held that the reasoning relied upon by Supreme Court in *D.B.* is inapplicable to cases involving gross sexual imposition in violation of R.C. 2907.05(A)(4). *See e.g., In*

*re J.T.*, 3d Dist. Paulding No. 11-17-03, 2018-Ohio-457; *In re D.C.*, 8th Dist. Cuyahoga No. 105433, 2018-Ohio-163; *In re B.O.*, 6th Dist. Huron No. H-16-022, 2017-Ohio-43; *In re D.S.*, 10th Dist. Franklin No. 15AP-487, 2016-Ohio-2810, *rev'd on other grounds*, 152 Ohio St. 3d 109, 2017-Ohio-8289; *In K.C.*, 1st Dist. Hamilton No. C-140307, 2015-Ohio-1613; *In re T.A.*, 2d Dist. Champaign Nos. 2011-CA-28, 2011-CA-35, 2012-Ohio-3174.[1]

{¶20} Specifically, these cases held that *D.B.* does not apply to the offense of gross sexual imposition under R.C. 2907.05(A)(4) because that statute defines the offense in terms of "sexual contact," where the touching is for *the purpose* of sexually arousing or gratifying either person. Comparatively, the offense of statutory rape, which contains *no element of mental culpability*, is different from the offense of gross sexual imposition, which does require a person to act with "purpose" to achieve sexual gratification. *See*, *In re J.T.*, *supra*, ¶ 20; *In re D.C.*, *supra*, ¶ 17; *In re B.O. supra*, ¶ 10; *In re D.S.*, *supra*, ¶ 16; *In re K.C.*, *supra*, ¶ 12; *In re T.A.*, *supra*, ¶ 26; *see also State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 1 (in which the Supreme Court of Ohio held that R.C. 2907.05(A)(4) establishes "a *mens rea* of purpose in regard to the sexual contact between the

---

[1] Notably, the Supreme Court of Ohio has had the opportunity to consider the constitutionality of R.C. 2907.05(A)(4) on this basis, but specifically declined to do so and instead resolved the case on alternate grounds. *See*, *In re D.S.*, 152 Ohio St. 3d 109, 2017-Ohio-8289, ¶ 12 ("We do not need to reach the constitutional question. We therefore do not consider whether R.C. 2907.05(A)(4) is unconstitutional as applied to the facts of this case pursuant to our decision in *D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671.").

defendant and the victim."). Based on this distinction in mental culpability, the jurisprudence from these cases hold that, unlike R.C. 2907.02(A)(1)(b), no arbitrary and discriminatory enforcement occurs when the state charges a child who was under the age of 13 with gross sexual imposition under R.C. 2907.05(A)(4).

{¶21} In other words, even though the offenses of statutory rape under R.C. 2907.02(A)(1)(b) and gross sexual imposition under R.C. 2907.05(A)(4) both involve protecting children under the age of 13, the offense of gross sexual imposition requires *proof of a specific culpable mental state*. Specifically, gross sexual imposition, pursuant to R.C. 2907.05(A)(4) requires that the offender engage in sexual contact with the "purpose" to cause sexual arousal or gratification, which differs from the strict liability standard of statutory rape. Thus, R.C. 2907.05(A)(4) provides a means of differentiating between the victim and the offender, an attribute which distinguishes it from the statutory rape provision at issue in *D.B.*, and as such, the victim and the offender in the cases involving gross sexual imposition under R.C. 2907.05(A)(4) are not treated alike because they are not similarly situated, thereby alleviating concerns regarding the same constitutional infirmity the Supreme Court found in R.C. 2907.02(A)(1)(b).

{¶22} In light of the foregoing, we find no merit, let alone any plain error, to A.M.'s constitutional arguments concerning the application of R.C. 2907.05(A)(4) to juvenile offenders under the age of 13.

{¶23} Accordingly, A.M.'s first assignment of error is overruled.

*Second Assignment of Error*

{¶24} In his second assignment of error, A.M. argues that the trial court erred when it overruled his motion to suppress the statements he made to law enforcement during an interview. Specifically, A.M. claims that he was in custody at the time he was questioned by a deputy with the Marion County Sheriff's Office and he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights.

*Standard of Review*

{¶25} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. We are required to accept the trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). We therefore review the trial court's application of the law *de novo*.

*Relevant Authority*

**{¶26}** The Fifth Amendment to the United States Constitution provides individuals with protection against self-incrimination. *See Chavez v. Martinez*, 538 U.S. 760, 765, 123 S.Ct. 1994 (2003). " 'Juveniles are entitled both to protection against compulsory self-incrimination under the Fifth Amendment and to Miranda warnings where applicable.' " *In re R.S.*, 3d Dist. Marion No. 11-13-10, 2014-Ohio-3543, ¶ 15, quoting *State v. Thompson*, 7th Dist. Jefferson Nos. 98 JE 28, 98 JE 29, *8 (Jan. 24, 2001), citing *In re Gault*, 387 U.S. 1, 55 (1967).

**{¶27}** In the instant case the magistrate denied suppression of the statements A.M made to law enforcement because she determined that A.M. was not subject to a custodial interrogation and, therefore, did not need to be advised of his *Miranda* rights.

*Custodial Interrogation*

**{¶28}** Police officers are not required to administer *Miranda* warnings to every person whom they question. *In re C.J.*, 12th Dist. Warren No. CA2017-06-082, 2018-Ohio-1258, ¶ 26; *State v. Biros*, 78 Ohio St.3d 426, 440 (1997). Only custodial interrogation triggers the need for *Miranda* warnings. *Biros* at 440. *Miranda* defines custodial interrogation as any "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384

U.S. 436, 444 (1966). In determining whether an individual is in custody, the ultimate inquiry is whether there was a formal arrest or a "restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler* 463 U.S. 1121, 1125 (1983). Moreover, any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. However, a noncustodial situation is not converted into a custodial situation simply because questioning takes place in a police station. *Oregon v. Mathiason*, 429 U.S. 492 (1977).

{¶29} Whether a person is in custody for Miranda purposes depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323-324 (1994). "Relevant factors to consider in determining whether a custodial interrogation took place are: (1) the location of the questioning; (2) duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical restraints; and (5) whether the interviewee was released at the end of the interview." *In re R.S.*, 3d Dist. Paulding No. 11-13-10, 2014-Ohio-3543, ¶ 17, citing *Howes v. Fields*, 132 S.Ct. 1181, 1189 (2012). In cases involving a juvenile, the juvenile suspect's age may be analyzed

as part of the court's determination on whether a custodial interrogation occurred. *In re R.S.*, *supra*, at ¶ 18, citing *J.D.B. v. North Carolina*, 564 U.S. 261 (2011).

*Facts Adduced at the Suppression Hearing*

{¶30} At the hearing on A.M.'s motion to suppress, the State presented testimony from Deputy Eric White of the Marion County Sheriff's Office. Deputy White recalled contacting A.M.'s parents prior to the interview regarding an incident that was reported to have occurred a week before on June 11, 2019. He stated that A.M.'s parents volunteered to bring A.M. to the Sheriff's department. Deputy White conducted an interview of A.M. on June 19, 2018 at the Sheriff's department. A.M. arrived with both his parents using their own transportation. Both of A.M.'s parents remained present during the entire 15 to 20 minute interview.

{¶31} Deputy White was not in uniform that day, but he was wearing a badge around his neck and a handgun in its holster around his waist. He recalled that the tone of the interview was "casual." (Tr. at 12). Deputy White specifically explained to A.M. was he was not under arrest, he was not going to jail, and he was not going to be handcuffed. Deputy White stated that although A.M. was free to leave at any time, the building was secured using key fobs to enter and exit certain rooms, one of them being the interview room. So if A.M., or anyone in the facility, expressed a desire to leave the room, a key fob would be required to open the door. Deputy White explained he advised A.M. and his parents of their rights "as a formality" and

presented them with a form entitled "Interrogation—Advice of Rights," advising them of their rights in writing and providing for a written waiver of those rights. He stated that A.M.'s father signed the form.[2] (Tr. at 30). Deputy White recalled that A.M. was not physically restrained and never expressed a desire to leave during the short interview. He stated that after answering questions regarding the incident, A.M. and A.M.'s parents left the building on their own accord.

{¶32} A.M.'s parents also testified at the suppression hearing. Both parents recalled receiving a phone call from Deputy White asking them to bring A.M. to the Sheriff's department for some questioning. After discussing the matter together, both parents agreed to drive A.M. to the Sheriff's office to talk to Deputy White. A.M.'s parents remembered that A.M. was scared and expressed he did not want do the interview, but that they told A.M. that he did not have a choice. A.M.'s parents indicated at the suppression hearing that they were aware of the circumstances underlying the interview because they had prior discussions with the victim's parents who were also their neighbors. A.M.'s parents viewed the interview as an opportunity for A.M. to tell his side of the story.

{¶33} Both parents recalled meeting a receptionist at the Sheriff's department upon their arrival, who asked them to take a seat in the lobby while they

---

[2] Notably, the "interrogation form" signed by A.M.'s father was admitted as an exhibit at the dispositional hearing and includes language consistent with the traditional *Miranda* warnings and an express waiver of those rights signed by A.M.'s father. (Ex. 3).

waited for Deputy White. After a short wait, Deputy White greeted them and led them to an interview room. Deputy White asked A.M.'s mother to close the door to minimize the outside noise in the room. Both parents recalled that A.M. was nervous during the interview. However, both parents independently stated that Deputy White never raised his voice or applied pressure to A.M. to elicit specific responses. A.M.'s father recalled that A.M. was present when Deputy White advised him of his rights and admitted to signing the form on behalf of A.M. explaining those rights and waiving them. A.M.'s father told Deputy White "we'll talk" upon signing the waiver. (Tr. at 31).

{¶34} A.M. testified at the suppression hearing. He explained that his father told him he needed to go to the Sheriff's department to tell the truth about the incident. A.M. felt that he could not tell *his parents* that he did not want to go. He recalled his father signing a form prior to him answering Deputy White's questions. He remembered feeling very nervous, but recalled that he calmed down after Deputy White explained that he was not going to jail or be handcuffed. A.M. explained that he felt he would be in trouble with his parents if he did not answer Deputy White's questions, and therefore he did not feel free to leave the interview room.

*Discussion*

{¶35} We conclude that the record, including a video of the interview admitted as Exhibit A, supports the magistrate's determination that Deputy White's

interview with A.M. did not rise to the level of a custodial interrogation. A.M.'s parents consented to the interview and voluntarily brought him to the Sheriff's department on their own accord. Both parents were present during the entire interview and were permitted to enter the conversation when they saw fit. Deputy White specifically told A.M. that he was not under arrest nor would he be based on their conversation. After the questioning, A.M. was not placed under arrest and was allowed to go home with his parents. Accordingly, the record establishes no basis to conclude that A.M. had been taken into custody or otherwise deprived of his freedom during the interview; therefore, we conclude that the magistrate reasonably determined that A.M. had not been in custody when his statements were made and as such the statements were not subject to suppression under *Miranda*.

{¶36} Accordingly, because we have concluded the magistrate did not err in determining that A.M. was not subject to a custodial interrogation with Deputy White, thereby requiring the advisements under *Miranda*, we do not need to address A.M.'s contention that he did not validly waive those rights during the interview.

{¶37} For all these reasons, the second assignment of error is overruled.

{¶38} Based on the foregoing, the assignments of error are overruled and the judgment is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**