[Cite as *State v. Dix*, 2023-Ohio-4123.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff- Appellee, :

                            No. 112458

           v. :

WILLIAM DIX, :

    Defendant-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-668168-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant William Dix appeals from a judgment of the trial court convicting him of attempted rape and other related offenses after a jury trial.

Dix was indicted for these offenses after his biological daughter, B.D., who was seven years old at the time of the incident, revealed at a game during school recess that her father "put his pee-pee in her butt." On appeal, Dix argues the prosecutor's suggestive comments about his silence at trial constituted reversible error and his trial counsel provided ineffective assistance of counsel in failing to object to those comments. He also argues his conviction is not supported by sufficient evidence and is also against the manifest weight of the evidence. Having reviewed the record and applicable law, we find no merit to these claims and affirm the trial court's judgment.

{¶ 2} Dix was charged with five counts based on B.D.'s disclosure. Under Count 1, he was charged with rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b). The state alleged that, sometime between May 27, 2019, and November 14, 2020, Dix engaged in sexual conduct, to wit: anal penetration, with B.D., born November 2012 and younger than 13 years of age at the time of the offense. Count 1 included a furthermore clause that Dix "purposely compelled the victim," who was under ten years of age, "to submit by force or threat of force."

{¶ 3} Count 2, as amended by the state, charged Dix with attempted rape in violation of R.C. 2907.02(A)(1)(b) and 2923.02 (the attempt statute), a first-degree felony. The count included an attempted rape specification pursuant to R.C. 2941.1419(A). R.C. 2941.1419 mandates an indefinite prison term of ten years to life when an offender is convicted of attempted rape and the victim is under ten years old at the time of the offense.

**{¶ 4}** Dix was additionally indicted for gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree (Count 3); endangering children in violation of R.C. 2919.22(B)(1), a felony of the second degree (Count 4); and endangering children in violation of R.C. 2919.22(A), a felony of the third degree (Count 5).

**Trial Testimony**

**{¶ 5}** The matter proceeded to a jury trial in January 2023. B.D., ten years old at the time, testified. Also testifying for the state were the vice principal of her school, her mother, a SANE nurse who examined her, two social workers from the Cuyahoga County Division of Children and Family Services ("CCDCFS"), and the detective in the case. Their testimony indicates that the sexual incident that led to the indictment against Dix first came to light in November 2021 when nine-year-old B.D., a third-grader, revealed the incident to another child at school. The school's vice principal became aware of the disclosure and, after talking to B.D., reported the incident to CCDCFS, which in turn reported the matter to the police.

**{¶ 6}** B.D. was the first witness to testify. Her parents had been separated since 2017, and she lived with her mother. The incident occurred when she and her 11-year-old brother, A.D., and 13-year-old brother, W.D., had an overnight visit with Dix at Dix's friend's residence, where Dix stayed at the time. W.D. slept on the couch, and B.D. and A.D. slept with Dix in Dix's bed. B.D. was between A.D. and Dix. Describing the incident, B.D. testified that "I tried to go to sleep and my dad pulled down my underwear and put his pee-pee in my butt, kind of," and that "[h]e

put his private, tried to put it in my butthole." She explained that his "private" meant his "pee-pee" and it felt "hairy." When asked how her butt felt, she stated "[l]ike it's pushed in" but it did not hurt; his "pee-pee" was "soft" and he was not "doing any movement with it." She said to him, "Daddy, stop," and he stopped. B.D. also testified there was no blood on her and there was no liquid coming out of Dix's "pee-pee."

{¶ 7} B.D. then went to the living room to lie down on the couch where W.D. was sleeping. She recalled she almost fell off the couch because it was very small. B.D. testified that she slept on the same bed with her father "all the time" but this was the only incident. She never talked to Dix or anyone else about the incident and tried to keep it a secret. When asked why she did not tell her mother, B.D. stated that she kept it a secret to herself because she thought she would get in trouble. B.D. testified that she loves her father and misses him, and she wrote a letter to Santa about him.

{¶ 8} Two years later, in November 2021, B.D. mentioned the incident in a "truth or dare" game at a school recess, telling a friend that "I had sex with my dad." By the end of the day, the school administration became aware of B.D.'s disclosure.

{¶ 9} The school's vice principal testified that he learned from a teacher about B.D.'s statement. He talked to B.D. to make sure she knew what "sex" meant. Based on her disclosure, he contacted CCDCFS and B.D.'s mother. B.D.'s mother testified that B.D. loves her father. She learned about the incident only when the social workers from CCDCFS came to her residence to ask about what B.D. had

revealed at school that day. She then took her daughter to the police station for an interview and later to Rainbow Babies & Children's Hospital for an examination. The day before Dix's arraignment, Dix came to her residence. B.D. told Dix what he had done, and what she stated was consistent with what B.D. told the police.

{¶ 10} Social worker Stephanie Moore, a child protection specialist, testified she went to B.D.'s home and interviewed her on the same day of B.D.'s disclosure at school. B.D. stated that while visiting her father on one occasion, "he was in bed with her and that he put his penis in her bottom." She interviewed her again at the Child Advocacy Center with the help of a diagram, which confirmed her disclosure. Another child protection specialist, Chanelle Childers, testified that she was involved in the investigation of B.D.'s allegation and the case was classified by the agency as "indicated," which meant that, although there was no evidence beyond the child's statement to support the allegation, the child's disclosure has been consistent.

{¶ 11} The SANE nurse at Rainbow Babies & Children's Hospital who examined B.D. also testified. B.D. told her that her father had his "pee-pee in her butt one time when [she] was seven. He did it in the summer when [she] was seven." B.D. stated that "he put this" — while pointing to a penis on the male diagram — "in this" — pointing to a butt on the female diagram. B.D. described her body as feeling "weird and wiggly." B.D. also told her that she did not feel safe with her father "because he did that to me and I'm never going over there again." The SANE nurse also testified that B.D.'s word for "buttocks" were "butt or bootie" and, when they

were going over the terms for different body parts, B.D., unprompted, suddenly said "he just put it in my butthole."

{¶ 12} After the state's case in chief, the trial court granted the state's motion to dismiss Count 4 (endangering children in violation of R.C. 2919.22(B)(1)) and the furthermore specification in Count 5 (endangering children in violation of R.C. 2919.22(A)) based on a lack of evidence for serious physical harm.

{¶ 13} The defense did not offer witnesses to testify on Dix's behalf. The jury found Dix not guilty of rape, but guilty of attempted rape as well as gross sexual imposition and endangering children. These counts were merged into Count 2 (attempted rape) for sentencing. Prior to sentencing, Dix addressed the court, claiming that this criminal case stemmed from a retaliation by B.D.'s mother, who fabricated the allegation because he reported her drug-abuse problem to the authorities. Dix was sentenced to a life sentence with the eligibility of parole after ten years.

{¶ 14} On appeal, Dix raises the following four assignments of error for our review:

> I. The government's suggestive statements about Mr. Dix's silence constituted reversible error.
>
> II. Trial counsel's failure to object to the government's suggestive comments concerning Mr. Dix's silence constituted ineffective assistance of counsel.
>
> III. The convictions in this case were obtained upon insufficient evidence.

IV. The convictions in this case were obtained upon insufficient evidence against the manifest weight of the evidence.

For ease of discussion, we first review the third and fourth assignments of error and discuss these claims jointly.

**Sufficiency and Manifest Weight of the Evidence**

{¶ 15} When considering a challenge to the sufficiency of the evidence, we review the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 16} Dix was convicted of attempted rape. R.C. 2907.02(A)(1), governing rape, states, in pertinent part: "(1) No person shall engage in sexual conduct with another * * * when * * * (b) The other person is less than thirteen years of age * * *." "Sexual conduct," in turn, is defined in R.C. 2907.01(A) as

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, *the insertion, however slight, of any part of the body * * * into the vaginal or anal opening* of another.

*Penetration, however slight, is sufficient to complete vaginal or anal intercourse.*

(Emphasis added.)

{¶ 17} "Sexual conduct" is to be contrasted with "sexual contact" prohibited under R.C. 2907.04, the gross sexual imposition statute. "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 18} Pursuant to the applicable statutes, therefore, to prove "sexual conduct" in this case, the state is required to present evidence that Dix attempted "the insertion, however slight" of his penis into the anal opening of B.D. R.C. 2907.91(A). B.D. testified that while she was trying to go to sleep, Dix pulled down her underwear and "tried to put [his private] in my butthole." She testified that her butt did not hurt but it felt "pushed in." Her testimony in addition reflects that Dix stopped the sexual activity when she told him to stop. The account of the incident was similar to what she provided to the social workers and the SANE nurse.

{¶ 19} Dix argues that there is insufficient evidence for attempted rape because B.D. testified Dix's penis felt "soft," he was not "doing any movement with it," and her butt did not hurt. He claims B.D.'s testimony at best described "sexual contact" prohibited in R.C. 2907.05, the gross sexual conduct statute.

{¶ 20} Our review of B.D.'s testimony indicates that she testified that Dix put his "pee-pee" in her "butt," which constitutes evidence of "sexual contact" as defined

in R.C. 2907.01(B). However, B.D. also testified at trial more specifically that Dix put his "pee-pee" in her *butthole* (which is consistent with her disclosure to the SANE nurse), her butt felt "pushed in," and he stopped only when she asked him to stop — evidence which, if believed, could constitute evidence that Dix attempted to insert his penis into B.D.'s anal opening, which is "sexual conduct" as statutorily defined.

{¶ 21} Dix cites *In re D.C.*, 2018-Ohio-163, 104 N.E.3d 121 (8th Dist.), to support his claim that there is insufficient evidence for attempted anal rape. The testimony in *D.C.* is substantially different from this case. In that case, the 12-year-old victim alleged that the defendant made the victim insert his own finger into his own anus. The victim testified that "[h]e held my hand and he held it up to my bottom, and then * * * [i]nto my bottom." *Id*. at ¶ 5. This court reversed the defendant's anal rape conviction, determining that there was insufficient evidence to establish the penetration of the anal opening. This court reasoned that "without additional context, we cannot conclude that the word 'bottom' meant anal opening as opposed to merely between the cheeks of the victim's buttocks."

{¶ 22} The instant case is distinguishable from *In re D.C.* Dix was not convicted of rape but attempted rape. The state here was not required to establish a penetration of the victim's anal opening but only an attempt to do so. The victim's testimony that Dix put his penis in her "butthole" and her butt felt "pushed in" before she asked Dix to stop constitutes sufficient evidence for attempted anal rape.

{¶ 23} Dix also argues the evidence is insufficient for his conviction of gross sexual imposition. Dix argues the evidence is insufficient because there was no testimony to establish that the "sexual contact" was made for the purpose of sexual arousal or gratification. While the Ohio Revised Code does not define sexual arousal or sexual gratification, R.C. 2907.01(B) "'contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.'" *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 18, quoting *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987). In proving gross sexual imposition, "'there is no requirement that there be direct testimony regarding sexual arousal or gratification.'" *Id.* at ¶ 19, quoting *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664. Dix's claim regarding his conviction of gross sexual imposition is therefore without merit. His claim that insufficient evidence supports the endangering children offenses — predicated on his insufficient-evidence claim regarding the attempted rape and gross sexual imposition — is similarly without merit.

{¶ 24} Dix also contends that his conviction is against the manifest weight of the evidence. While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v.*

*Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. When a defendant argues his or her conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This case hinges on the credibility of B.D., who was ten at the time of the trial. When assessing the credibility of witnesses, we will keep in mind that the jurors are "uniquely positioned to view the witnesses' demeanor, gestures, facial expressions, and voice inflections." *State v. Hester*, 8th Dist. Cuyahoga No. 108207, 2019-Ohio-5341, ¶ 20.

{¶ 25} We recognize that the only evidence for Dix's conviction is B.D.'s disclosure about the incident two years later. However, she testified in person at trial and appeared to have a good recollection of the event, providing details such as Dix pulled down her underwear, his penis was "hairy" and "soft," her butt felt "pushed in" but did not hurt, she had no blood on her and no liquid came out of Dix's penis, and she almost fell off the couch when she went to lie down on the couch where her older brother was sleeping. Her account of the incident was consistent with what she told the social workers first in her home and later at the Child

Advocacy Center, as well as what she told the SANE nurse when interviewed. Specially, she stated Dix put his penis in her butthole both at the SANE nurse interview and at trial.

{¶ 26} Having thoroughly reviewed the trial transcript, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, we are unable to conclude that the jury clearly lost its way in this case and created such a manifest miscarriage of justice that Dix's conviction must be reversed. The third and fourth assignments of error are without merit.

**Alleged Comments on the Defendant's Silence**

{¶ 27} The first and second assignments of error concern Dix's claims that the prosecutor made "suggestive" statements about his silence at trial and that his trial counsel's failure to object to the comments constituted ineffective assistance of counsel. We address these claims jointly. Dix claims that the following comments made by the prosecutor during the closing argument improperly implied that his silence is evidence of guilt:

> There is no evidence this didn't happen. There is no evidence [B.D.] misinterpreted what happened. There's been no evidence that something else could have happened. * * * The defense voir dire'd on misinterpreted actions. Could a child misinterpret something? Not a shred of evidence that this was a misinterpretation of what happened.

{¶ 28} It is well established that direct comments on an accused's failure to testify violate the Fifth Amendment's self-incrimination clause. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), syllabus. "Prosecutors' comments on a defendant's refusal to testify have always been looked

upon with extreme disfavor because they raise an inference of guilt from the defendant's decision to remain silent." *State v. Morton*, 8th Dist. Cuyahoga No. 109200, 2021-Ohio-581, ¶ 17, citing *State v. Thompson*, 33 Ohio St.3d 1, 14, 514 N.E.2d 407 (1987).

{¶ 29} However, as the Supreme Court of Ohio explained:

> A reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is instructed not to consider the accused's failure to testify for any purpose.

*State v. Ferguson*, 5 Ohio St.3d 160, 450 N.E.2d 265 (1983), paragraph one of the syllabus. *See also State v. Jackson*, 2023-Ohio-455, 208 N.E.3d 1010 (8th Dist.), ¶ 36; *Morton* at ¶ 18; *State v. Hall*, 2d Dist. Montgomery No. 25794, 2014-Ohio-2094, ¶ 22; *State v. Jones*, 8th Dist. Cuyahoga No. 89374, 2008-Ohio-1715, ¶ 13; and *State v. Smith*, 8th Dist. Cuyahoga No. 88371, 2008-Ohio-3657, ¶ 76.

{¶ 30} Our review of the comments challenged by Dix indicates that the prosecutor was not making impermissible comments about Dix's failure to testify but rather making permissible reference to the uncontradicted evidence presented by the state. The prosecutor was remarking on the strength of the state's case, and furthermore, the jury was properly instructed by the trial court that Dix "has a constitutional right not to testify. [And] [t]he fact that he did not testify must not to be considered by you for any purpose whatsoever." Accordingly, we reject Dix's claim that the state's suggestive comments about his silence constituted reversible error.

{¶ 31} Dix also argues that his trial counsel provided ineffective assistance of counsel in failing to object to the state's "suggestive" comments. To establish ineffective assistance of counsel, an appellant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance will not be deemed ineffective unless the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *State v. Iacona*, 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001).

{¶ 32} Because, as we have determined, the prosecutor's remarks were not improper comments on Dix's failure to testify, Dix's trial counsel did not provide ineffective assistance in failing to object. In any event, we note that "[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). "[T]actical decisions, such as whether and when to object, ordinarily do not give rise to a claim for ineffective assistance." *State v. Miner*, 2020-Ohio-5600, 164 N.E.3d 512, ¶ 24 (5th Dist.), citing *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139-140. In this case, it is likely that Dix's counsel may not have wanted to draw further attention to the prosecutor's remarks about the uncontradicted evidence presented by the state. Our review does not reflect that Dix's trial counsel was deficient in not objecting to the prosecutor's comments

during the closing argument. The first and second assignment of error are without merit.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHAEL JOHN RYAN, J., CONCUR