[Cite as *In re A.S.*, 2024-Ohio-731.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.S.                                          :

A Minor Child                                    :

:          No. 112748

:

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 29, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL22100174

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Chadwick Cleveland, Assistant Prosecuting
Attorney, *for appellant.*

Carmen Naso, *for appellant.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Defendant-appellant A.S. appeals from his adjudication of delinquency related to various gun-related offenses. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} On January 7, 2022, A.S., d.o.b. 4/15/2008, was charged in a six-count complaint in the Cuyahoga County Juvenile Court related to a shooting that

occurred at the Arbor Park apartment complex in Cleveland, Ohio that took place on December 30, 2021. A.S. was alleged to have engaged in conduct which, if he were an adult, would constitute one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1); two counts of felonious assault in violation of R.C. 2903.11(A)(2) against Arbor Park security officers; one count of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3); and two counts of improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16(A) and 2923.16(B). Five of the counts included one-year, three-year, and five-year firearm specifications.

{¶ 3} On August 29, 2022, the case proceeded to an adjudicatory hearing.

{¶ 4} Ashley Norwood ("Norwood") testified that on December 30, 2021, she and her five children lived in a townhome on the corner of East 39th Street and Longwood Avenue in the Arbor Park apartment complex. She testified that she was at home on December 30, 2021, and at some point in the evening, she heard gunshots. Norwood explained that the shots initially sounded like they were a distance away, north of her house in the direction of Bivens Avenue, but the gunshots progressively got closer to her house. Norwood testified that as the shots got closer to her home, she began panicking, getting on the floor and screaming at her children to do the same. Norwood testified that she heard gunshots hit her home, and after the shooting, she saw two bullet holes in the wall of her house. Norwood called 911, and police responded to Norwood's home. The state introduced

body camera footage from a responding officer showing Norwood pointing out the bullet holes to the police.

{¶ 5} Alexander Hamrick ("Hamrick") testified that he worked as a security officer at the Arbor Park apartments. Hamrick testified that he was working on December 30, 2021, and around 3 or 4 p.m., a group started to congregate in the area near East 37th Street and Longwood Avenue. Hamrick testified that security tends to pay attention to large groups "because it's usually nonsense that goes on, and in this case the group continued to get bigger and bigger." Hamrick testified that the group appeared to be filming a rap video. When the state introduced a still frame from state's exhibit No. 2, the rap video, Hamrick identified himself and another security officer in the background of the video; Hamrick testified that he was unaware that he was being filmed himself but knew that the group was filming something.

{¶ 6} Hamrick testified that several days later, an employee in Arbor Park's leasing office informed him of the existence of a rap video posted online. Hamrick subsequently viewed the video in its entirety and then contacted the Arbor Park property manager and Cleveland police.

{¶ 7} The state played the video in its entirety at the adjudicatory hearing, over A.S.'s counsel's objection. The video begins with an aerial shot of the Arbor Park apartment complex and then proceeds to show a large crowd of people of all ages dancing, rapping, drinking, and smoking marijuana in the streets of Arbor Park. The individual identified as A.S. was a central figure in the video, and he was

shown brandishing multiple firearms, including an assault rifle and handguns with drum magazines. At some points, A.S. had a gun in each hand; he repeatedly aimed the guns directly into the camera. A.S. is not the only individual shown brandishing a firearm; a common thread throughout the video is the participants' cavalier attitude to an excess of guns.

{¶ 8} Hamrick also testified that approximately an hour or two after the scene depicted in the rap video, he was patrolling Arbor Park with another security officer, Anthony Rocco ("Rocco"), in Rocco's personal vehicle, a white SUV. While patrolling, Hamrick and Rocco heard gunshots and proceeded north on East 37th Street in the direction from which they believed the shots were fired. Hamrick testified that they observed a black SUV make a U-turn on Bivens Avenue. Hamrick testified that he and Rocco "then engaged full because the driving was very erratic, and then we witnessed individuals holding guns out the window and shooting." Hamrick testified that the black SUV then made a right turn onto Longwood Avenue and continued to drive at a high rate of speed onto East 35th Street, ultimately leaving the Arbor Park property; Hamrick and Rocco eventually stopped following them. Hamrick testified that while they were in pursuit of the black SUV, he could not get a good look at the individuals he observed hanging out of the vehicle and holding their guns outside, but after viewing Arbor Park security footage, he was "able to observe who had done what."

{¶ 9} The state introduced surveillance footage from various vantage points around the Arbor Park property showing the black SUV. The state also introduced

Hamrick's body camera footage depicting Hamrick and Rocco's pursuit of the black SUV. In one surveillance video, a black SUV can be seen pulling over on Bivens Avenue. Three individuals exit the vehicle and run into a dark area between two buildings; the driver remains in the vehicle. One of the individuals appears to be wearing a black and white athletic jacket. Another individual appears to be wearing a reddish-brown hoodie and pants. A short time later, the individuals return to the vehicle, the driver makes a U-turn, and the vehicle speeds off out of frame. Several seconds later, a white SUV is shown driving down Bivens, following the path of the black SUV.

{¶ 10} Hamrick testified that after the failed pursuit of the SUV, he and Rocco drove around the property to assess damage and determine if there had been any victims of the recent gunfire. Hamrick subsequently contacted police, viewed security footage, and turned security footage over to police. Finally, Hamrick testified that a detective administered a photo array to him, and Hamrick identified A.S. as an individual he observed discharge a firearm out of the black SUV around Bivens and Longwood Avenue on December 30, 2021.

{¶ 11} Detective Kyle Schinke ("Schinke") of the Cleveland Division of Police testified that he conducted the investigation in this case. Schinke testified that at some point following the incident, he received a report titled "Shooting Into a Habitation" and subsequently went to Norwood's home to discuss the incident with her. Schinke testified that he observed what appeared to be bullet defects in the side of the house and on an interior wall of the house. Schinke then reached out to Arbor

Park security and obtained surveillance footage of the area. Schinke testified that he inspected the area on Bivens where the three individuals were observed exiting the black SUV and running into a dark area between buildings; Schinke recovered a spent 9 mm shell casing from that area.

{¶ 12} Schinke testified that he viewed state's exhibit No. 2, the rap video, and observed a group of people in the Arbor Park complex. Schinke testified that the video was posted on YouTube and on a public Instagram page, so he was able to access the video from his own Instagram account. Specifically, Schinke testified that the video depicted a male wearing a black and white jumpsuit that matched one of the suspects who was seen exiting and reentering the black SUV; Schinke identified this individual as A.S. Throughout the video, this individual is shown brandishing multiple weapons.[1] The video also showed another individual behind A.S., wearing a brown hoodie and reddish-brown pants; Schinke testified that he believed this individual was A.S.'s older brother. Schinke testified that he prepared a photo array, which a blind administrator presented to Hamrick.

{¶ 13} When the state rested, defense counsel renewed its objection to state's exhibit No. 2, the rap video, arguing that the probative value of the video was outweighed by the danger of prejudice. In response, the state argued that the video

---

[1] The video begins with a written disclaimer stating: "All Items Used In the Video Are Props Used For The Inhancement [sic] Of This Film[.]" In response to a question from the court as to whether the firearms visible in the video were real firearms or props, Schinke testified that they were real, stating, "Well, through my training. Most of these Instagram videos do say they are prop guns, but we've came to know that they are live guns, live rounds, live guns."

was highly probative with respect to the identification of the alleged delinquent, and the footage in the video occurred within an hour or two of the incident giving rise to this case.

{¶ 14} The court ultimately stated that it would accept the video into evidence "for the limited purpose of what was observed as how he appeared, what he was wearing, so on and so forth."

{¶ 15} A.S.'s counsel made an oral motion for acquittal pursuant to Juv.R. 29. With respect to Count 1, counsel did not dispute that Norwood's home was hit by gunfire but argued that the evidence did not show A.S. shooting into Norwood's home. With respect to Counts 2 and 3, counsel argued that no evidence was presented that whoever was shooting out of the vehicle was shooting at Rocco or Hamrick, and moreover, neither Rocco nor Hamrick testified to that effect. With respect to the remaining counts, counsel conceded that the state could meet its burden of showing that there was at least one firearm in the suspect vehicle. With respect to the five-year drive-by shooting specification, counsel argued that there was no evidence presented that A.S. purposely or knowingly caused or attempted to cause death or physical harm by shooting out of a vehicle.

{¶ 16} The court granted A.S.'s motion with respect to Counts 2 and 3, felonious assault, and proceeded with the remaining counts and specifications. A.S. rested his case subject to the admission of exhibits. The court heard closing arguments.

{¶ 17} On February 1, 2023, the court found A.S. delinquent as to Count 4, discharge of a firearm on or near prohibited premises, with a one- and three-year firearm specification; and Count 6, improperly handling firearms in a motor vehicle. The remaining counts were dismissed.

{¶ 18} On March 2, 2023, a magistrate held a dispositional hearing. The investigating probation officer's report was read into the record; the report recommended that A.S. be given a suspended commitment to the Ohio Department of Youth Services ("ODYS") and referred to probation, complete community service, and complete a gun safety and education class. The state requested that A.S. be committed to ODYS. A.S.'s counsel agreed with the recommendation of the probation officer.

{¶ 19} The magistrate found that because it had found A.S. delinquent of one- and three-year firearm specifications, A.S. was subject to a mandatory commitment to ODYS. The court ordered A.S. to be committed to ODYS for 12 months on Count 4 and six months on Count 6, to be served consecutively.

{¶ 20} On March 20, 2023, A.S. filed objections to the magistrate's decision. On April 20, 2023, the court overruled A.S.'s objections and adopted the magistrate's decision.

{¶ 21} On May 22, 2023, A.S. filed a notice of appeal. A.S. presents two assignments of error for our review:

> I. The evidence at trial was legally insufficient to sustain a finding of delinquency to the charge of discharging a firearm on or near prohibited premises with a one- and three-year firearm specification.

II. The trial court erred in admitting state's exhibit No. 2, the rap video, in violation of Evid.R. 403(A).

**Legal Analysis**

**I. Sufficiency of the Evidence**

{¶ 22} A.S. contends that the evidence presented at trial was not sufficient to support an adjudication of delinquency as to Count 4, discharging a firearm on or near prohibited premises. Specifically, he argues that the state did not present evidence beyond a reasonable doubt that A.S. himself physically discharged a firearm from the suspect motor vehicle. Moreover, A.S. argues that it is difficult to juxtapose a finding of delinquency on Count 4 for discharging a firearm on or near prohibited premises with a finding that A.S. was not delinquent of Count 5, improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(A).[2]

{¶ 23} A juvenile court may adjudicate a juvenile to be a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4); *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 26; *In re Williams*, 3d Dist. Marion No. 9-10-64, 2011-Ohio-4338, ¶ 18. Due

---

[2] The juvenile court found A.S. not delinquent of Count 5, improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(A), which provides that no person shall knowingly discharge a firearm while in or on a motor vehicle. The juvenile court also found A.S. delinquent of Count 6, improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), which provides that no person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle. A.S. does not challenge the sufficiency of the adjudication with respect to Count 6, and we will therefore not include Count 6 in our analysis. To the extent that we refer to improper handling of a firearm in a motor vehicle in this analysis section, it will be in reference to Count 5.

to the "'inherently criminal aspects'" of delinquency proceedings, claims involving the sufficiency of the evidence and the manifest weight of the evidence in delinquency appeals are subject to the same standards of review applicable to criminal convictions. *In re T.J.*, 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 19, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6; *In re R.S.* at ¶ 26, citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989); *see also In re S.H.*, 8th Dist. Cuyahoga No. 100529, 2014-Ohio-2770, ¶ 17, 25.

{¶ 24} In his first assignment of error, A.S. argues that there was not sufficient evidence to support an adjudication of delinquency. The standard of review for issues involving sufficiency of the evidence in delinquency adjudications is the same as the standard for adults; the evidence is viewed in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *In re M.P.*, 8th Dist. Cuyahoga No. 111608, 2023-Ohio-925, ¶ 37, citing *In re T.N.R.*, 8th Dist. Cuyahoga No. 111367, 2023-Ohio-85, ¶ 38, citing *In re D.C.*, 2018-Ohio-163, 104 N.E.3d 121, ¶ 3 (8th Dist.), citing *In re Washington*, 81 Ohio St.3d 337, 339, 691 N.E.2d 285 (1988).

{¶ 25} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at

386. We do not assess whether the state's evidence is to be believed; we assess whether the evidence admitted at trial, if believed, supported the adjudication. *Thompkins* at 390 (Cook, J., concurring).

{¶ 26} In other words, we assume the state's witnesses testified truthfully and determine whether that testimony, along with any other evidence presented, satisfies each element of the offense. *In re D.R.S.*, 8th Dist. Cuyahoga No. 103584, 2016-Ohio-3262, ¶ 23. The elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 25, citing *State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). "Direct evidence exists when 'a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish.'" *Wells* at ¶ 25, quoting *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence is "evidence that requires 'the drawing of inferences that are reasonably permitted by the evidence.'" *Wells* at ¶ 25, quoting *Cassano* at ¶ 13; *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[C]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind."). Circumstantial evidence and direct evidence have "equal evidentiary value." *Wells* at ¶ 26, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12.

{¶ 27} The juvenile court found A.S. delinquent of one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), with a one- and three-year firearm specification. R.C. 2923.162(A)(3) provides in relevant part that "no person shall * * * discharge a firearm upon or over a public road or highway."

{¶ 28} Here, Hamrick testified that he heard gunshots, saw a black SUV make a U-turn, and "witnessed individuals holding guns out the window and shooting." While Hamrick testified that at the time he was unable to tell what the individuals looked like, he was "able to observe who had done what" after watching security footage of the incident. Hamrick also testified that subsequently, when he was shown a photo lineup of suspects, he was able to identify A.S. as one of the individuals who had been shooting out of the car.

{¶ 29} This testimony is sufficient to establish that A.S. discharged a firearm over a public road. In reviewing a sufficiency challenge, we do not consider whether the evidence should be believed; instead, we consider whether, if the evidence is believed, it is legally sufficient to support an adjudication. Thus, regardless of the unlikelihood that Hamrick was able to discern who was shooting out of the suspect vehicle, the evidence shows that after viewing surveillance footage, he was able to identify A.S. one of the shooters. Based on this evidence, any rational trier of fact could have found that A.S. discharged a firearm over a public road.

{¶ 30} With respect to the juxtaposition of the court's finding that A.S. was delinquent of Count 4 but not delinquent of Count 5, we are not persuaded that these

verdicts have any bearing on the sufficiency of the evidence supporting A.S.'s delinquency adjudication. Count 4, discharge of a firearm on or near prohibited premises, provides that no person shall discharge a firearm upon or over a public road or highway. R.C. 2923.162(A)(3). Count 5, improperly handling a firearm in a motor vehicle, provides that no person shall knowingly discharge a firearm while in or on a motor vehicle. While these counts deal with similar forms of conduct, Count 5 includes the element that the offender acted "knowingly." While A.S. argues that it is "clear" that the reason A.S. was found not guilty of Count 5 was because he was not the identified as the perpetrator of Count 5, and not because he was identified but lacked the requisite *mens rea*, we cannot reach the same conclusion. We can only conclude that the trial court determined that A.S. was delinquent of Count 4, a strict liability offense, and not delinquent of Count 5, an offense that required a different *mens rea*.

{¶ 31} For these reasons, A.S.'s first assignment of error is overruled.

## II. Admission of State's Exhibit No. 2

{¶ 32} In his second assignment of error, A.S. argues that the trial court erred when it admitted state's exhibit No. 2, the rap video, into evidence, in violation of Evid.R. 403(A).

{¶ 33} The admission or exclusion of evidence is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *In re M.P.*, 8th Dist. Cuyahoga No. 111608, 2023-Ohio-925, ¶ 24, citing *State v. Simmons*, 8th Dist. Cuyahoga No. 98613, 2013-Ohio-1789, ¶ 18, citing *State v. Frazier*, 8th Dist.

Cuyahoga No. 97178, 2012-Ohio-1198, ¶ 17. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 34} "'The admissibility of other-acts evidence under Evid.R. 404(B) is a question of law' that we review de novo." *State v. Grimes*, 8th Dist. Cuyahoga No. 110925, 2022-Ohio-4526, ¶ 27, quoting *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. "However, 'the trial court's weighing of the probative value of admissible evidence against the danger of unfair prejudice to the defendant under Evid.R. 403(A) involves an exercise of judgment.'" *Id.*, quoting *State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 132, citing *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 117. Therefore, we review that decision for an abuse of discretion. *Id.* The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.

{¶ 35} Evid.R. 404(B) provides that

[e]vidence of any other crime, wrong or act is not admissible to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character.

This evidence may, be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Further, Evid.R. 403(A) provides that, although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 36} The Ohio Supreme Court has set forth a three-step analysis for determining whether other acts evidence is admissible:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶ 37} With respect to the first step of the *Williams* analysis, we note that the rap video makes several consequential facts more or less probable than they would be without the video. First, the video, taken together with witness testimony, places A.S. in the Arbor Park complex within hours of the shooting. Further, it is highly relevant to the identification of A.S. as one of the suspects in the black SUV. A.S.'s clothing in the video, and the clothing of at least one individual in the background of the video, appear to be the same as the clothing of two of the individuals who exited and reentered the black SUV. While the surveillance footage alone would have made it difficult to identify any of the suspects, that footage together with the rap video were critical in determining A.S.'s identity.

{¶ 38} With respect to the second step of the *Williams* analysis, we begin by noting that the trial court heard A.S.'s arguments as to the highly prejudicial nature of the video and stated that it would consider the video for a limited purpose — specifically, for identifying A.S. The video was not shown to a jury, but rather to an experienced juvenile court judge. Further, "we presume that 'the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v. Robbins*, 1st Dist. Hamilton No. C-120107, 2013-Ohio-612, ¶ 14, quoting *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968).

{¶ 39} Finally, with respect to the third step, we agree with the trial court that the probative value of the video was not substantially outweighed by the danger of unfair prejudice. The rap video made the identification of A.S. more probable than it would have been without the evidence, and the evidence was necessary for the legitimate purpose of establishing A.S.'s identity. *State v. Woods*, 8th Dist. Cuyahoga Nos. 112579 and 112580, 2024-Ohio-467, ¶ 33.

{¶ 40} The video at issue set the stage for the shooting that very closely followed the filming, and its probative value far outweighed its prejudice. In light of the foregoing, we cannot conclude that the admission of the rap video was an abuse of discretion. Therefore, A.S.'s second assignment of error is overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
SEAN C. GALLAGHER, J., CONCUR