[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re P.M.S.*, Slip Opinion No. 2026-Ohio-1543.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1543

IN RE P.M.S.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re P.M.S.*, Slip Opinion No. 2026-Ohio-1543.]**

*Criminal law—Juvenile delinquency—Sufficiency of the evidence—Rape—R.C. 2907.02(A)(2)—A rational trier of fact could have found beyond a reasonable doubt that juvenile offender used force, as defined by R.C. 2901.01(A)(1), to compel victim to submit to sexual conduct—Court of appeals' judgment affirmed.*

(No. 2023-1531—Submitted February 11, 2025—Decided May 1, 2026.)

APPEAL from the Court of Appeals for Warren County,
No. CA2022-05-036, 2023-Ohio-3825.

_____

BRUNNER, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ., joined.

**BRUNNER, J.**

**{¶ 1}** This appeal centers on what constitutes force under Ohio's rape statute, R.C. 2907.02, to sustain an adjudication of delinquency against a child who has engaged in sexual conduct with another child. Applying the same laws and evidentiary review that is used in adult criminal cases, we affirm the Twelfth District Court of Appeals' judgment and hold that sufficient evidence was presented during the delinquency adjudication to prove that the offender used violence, compulsion, or constraint to compel the victim to submit to the sexual conduct.

## I. BACKGROUND

**{¶ 2}** In 2021, appellee, the State of Ohio, filed complaints in the Hamilton County Juvenile Court against appellant, Paul,[1] alleging six counts of rape and two counts of gross sexual imposition. At the time of the alleged offenses, Paul was 14 years old. Paul was accused of engaging in sexual activity with another child, Charles, who was 15 years old and approximately a year older than Paul at the time of the offenses. The boys lived together in a youth home.

**{¶ 3}** The offense at issue in this appeal is one of the rape counts, which alleged that Paul "did engage in sexual conduct, to wit: anal intercourse with [Charles] . . . having purposely compelled submission by force or threat of force." During the adjudication hearing before a magistrate, the State called Kelvin Satterwhite, an employee of the youth home who had reported the sexual activity to authorities. Satterwhite testified that he was in the youth home when he overheard Paul and Charles through a video monitor. Satterwhite heard Charles say, "[N]o, I'm not gonna do it, because I gave you oral sex twice already."

---

1. We adopt the pseudonyms used by the court of appeals and refer to the juvenile offender, P.M.S., as "Paul" and the juvenile victim, C.T., as "Charles." *See* 2023-Ohio-3825, ¶ 1-2, fn. 1 and fn. 2 (12th Dist.). Those pseudonyms have also been adopted by the parties in their briefs submitted to this court.

Satterwhite further testified that he then "heard [Paul] mumble, 'but I want you, and I want you now.'"

{¶ 4} Satterwhite testified that he went outside looking for the boys and heard voices behind a shed at the back of the youth home. He then described what he saw:

> [Charles] was bent over and [Paul] was behind him, and he had both hands around his waist pulling him towards him, and I immediately asked what they was doing. And [Charles] jumped up, and [Paul] stood up, and then he just blurted out that he wanted me to do it.

{¶ 5} The prosecutor asked Satterwhite to describe what he saw when he found Paul with his hands around Charles's waist, and Satterwhite explained, "It was a grip around his waist. He was thrusting—he was using a thrust motion towards his private area while he was bent over." Satterwhite testified that Charles looked like "he was scared that it was happening to him." Satterwhite took the boys inside and called 9-1-1.

{¶ 6} The prosecutor then called Charles, who testified that the boys had shared a room together at the youth home. Charles said that he and Paul became friends and "did things together." He explained that they used to "play outside" and "[t]ake walks or ride bikes." The prosecutor asked Charles if their being friends ever changed, and he responded, "No, not at all."

{¶ 7} Charles testified that Paul asked him to perform oral sex while they were in a car together. When the prosecutor asked Charles how he had responded to Paul, Charles said, "I responded not that good, but I couldn't really do anything at that point." The prosecutor asked why, and Charles answered, "Because I was afraid." And when asked why he was afraid, Charles explained, "I was afraid that

I would get in trouble. I was afraid if I did it that I would get the police called and it would get blamed on me for letting it happen."

{¶ 8} Regarding the day the boys were caught behind the shed, Charles testified that Paul made Charles pull his own pants down before Paul had anal intercourse with him. Charles told the court that it was something he did not want to do; he testified, "I think I was forced to, to my understanding." When asked how he was forced, Charles explained that Paul held his legs and hovered over him. The prosecutor asked Charles if he had tried to get Paul to stop, and Charles responded, "Yes," but he stated that Paul did not stop. Charles testified that he told Paul, "I don't want to do it," but that Paul "ke[pt] asking [him] at that time."

{¶ 9} On cross-examination, Charles acknowledged that he did not want to get into trouble for fear that he would be moved to another group home, which would have been his third move. And Charles agreed that Paul "never threatened" him and "never hurt" him. Paul's attorney concluded his cross-examination of Charles with the following exchange:

Q. You went behind the shed with [Paul] because he asked you to do that, right?

A. Yeah.

Q. You had sex with [Paul] because he asked you to do that, right?

A. Yep.

Q. I think you said before that you didn't want to do it but he convinced you to?

A. Yeah.

Q. By asking and asking?

A. Uh-huh.

{¶ 10} The State rested its case following Charles's testimony, and Paul moved for a dismissal under Juv.R. 29. Paul's attorney argued that the State may have proved that Paul had *persuaded* Charles to engage in sex with him but that it had not established that Paul had *forced* Charles to do so. The State responded by pointing to Satterwhite's testimony that Paul was grabbing Charles's hips and waist and thrusting toward Charles. The State also noted Charles's testimony that he did not want to engage in anal intercourse with Paul and that he had felt he was being forced to do it.

{¶ 11} The magistrate found that Paul had committed two of the rape offenses, including the anal-intercourse rape behind the shed, and adjudicated Paul a delinquent child. The magistrate dismissed the remaining rape charges and both the gross-sexual-imposition charges.

{¶ 12} With respect to the rape charges generally, the magistrate explained:

> All I have is [Charles] in front of me. [Charles] did talk in terms of he felt that he—maybe he didn't use this word, was badgered, quite frequently into submitting into sexual conduct with [Paul], that he sees quite obvious that [Charles] is a people pleaser, doesn't want to say no to anyone, doesn't have that strength of character, maybe the fortitude to be able to say no as other people do. He indicated that that wasn't really something he wanted to do, but kept submitting to the requests that were made over and over.

{¶ 13} And with respect to the anal-intercourse rape charge at issue in this appeal, the magistrate explained:

> On the date of the incident [Charles] had indicated that he didn't want to have sex with [Paul]. [Paul] kept asking him, kept asking

him. He did voluntarily go behind the shed, however, he indicated that his pants were pulled down and [Paul] was forcing himself inside of him.

{¶ 14} Paul objected to the magistrate's decision and argued that the State had failed to prove beyond a reasonable doubt the element of force as required by R.C. 2907.02(A)(2), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The juvenile court adopted the magistrate's decision as to the rape charge at issue here, finding that the State had established the element of force through Charles's testimony, which was further supported by Satterwhite's testimony.[2]

{¶ 15} Following the adjudication and pursuant to Juv.R. 11, the case was transferred to the Warren County Juvenile Court, the county where Paul resided, for disposition. That court issued an order of disposition committing Paul to the custody of the Department of Youth Services for an indefinite term consisting of a minimum period of one year.

{¶ 16} On appeal, the Twelfth District affirmed the adjudication of delinquency. While recognizing that a reasonable trier of fact could have decided this case either way, 2023-Ohio-3825, ¶ 17 (12th Dist.), the appellate court rejected any invitation to scrutinize the reasoning process of the trial court, *id*. at ¶ 18, citing *Jackson v. Virginia*, 443 U.S. 307, 319, fn. 2 (1979). The court of appeals found that based on the testimony at the adjudication hearing, a reasonable trier of fact could have found that Paul had "exerted physical compulsion or constraint"—i.e., force—to compel Charles to engage in anal intercourse. *Id*. at ¶ 16.

---

2. The juvenile-court judge determined that the evidence was insufficient to support the other rape offense that the magistrate found Paul to have committed.

6

**{¶ 17}** We accepted Paul's discretionary appeal on the following proposition of law:

A trial court may not adjudicate a juvenile to be delinquent by reason of rape when the only evidence of force is the physical exertion inherent in the sexual act itself.

*See* 2024-Ohio-555.

## II. ANALYSIS

### A. Standard of review

**{¶ 18}** Although "juvenile courts are not meant to function as adult criminal courts," *In re D.R.*, 2022-Ohio-4493, ¶ 13, juvenile-delinquency proceedings do have "inherently criminal aspects," *In re A.J.S.*, 2008-Ohio-5307, ¶ 26, citing *State v. Walls*, 2002-Ohio-5059, ¶ 26. Thus, juveniles are often afforded the same protections and entitled to the same procedural due process that adult criminal defendants receive. *See Walls* at ¶ 26. Important to this appeal, a juvenile may be adjudicated delinquent if the State's evidence establishes beyond a reasonable doubt that the juvenile committed an act that would constitute a crime if committed by an adult. *See* R.C. 2151.35(A)(1); *see also In re Winship*, 397 U.S. 358, 368 (1970) (finding that juveniles, like adults, are entitled to the beyond-a-reasonable-doubt standard in delinquency adjudications).

**{¶ 19}** Therefore, in reviewing whether the State has presented sufficient evidence to meet its burden of proof, we apply the same standard for juvenile-delinquency adjudications that we apply when reviewing adult criminal convictions. *See In re Watson*, 47 Ohio St.3d 86, 91-92 (1989); *In re Washington*, 1998-Ohio-627, ¶ 8; *see also In re A.S.*, 2024-Ohio-731, ¶ 23 (8th Dist.); *In re J.C.*, 2019-Ohio-4027, ¶ 10 (1st Dist.); *In re Fortney*, 2005-Ohio-3618, ¶ 19 (4th Dist.).

{¶ 20} In this case, Paul challenges whether the juvenile court had sufficient evidence to find him delinquent for committing the act of rape. This is a question of law that is reviewed de novo. *See State v. Dunn*, 2024-Ohio-5742, ¶ 28. In a sufficiency-of-the-evidence challenge, our inquiry is focused on "'whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.'" *Id*., quoting *State v. Dent*, 2020-Ohio-6670, ¶ 15. We do not "ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind [that the juvenile committed the act] beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

{¶ 21} The juvenile court found that Paul had committed the offense of rape under R.C. 2907.02(A)(2), which prohibits "sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Threat of force is not an issue in the case, as Charles testified, "[Paul] never threatened me at all." Rather, Paul argues that the State failed to prove that he used force to overcome the will of Charles, because the only force he used was that which was "inherent in the sexual act itself—the physical exertion necessary to engage in the act."

### B. Establishing force under R.C. 2907.02(A)(2)

{¶ 22} R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Rape by force may be proven by showing that a "'victim's will was overcome by fear or duress.'" *State v. Eskridge*, 38 Ohio St.3d 56, 59 (1988), quoting *State v. Fowler*, 27 Ohio App.3d 149, 154 (8th Dist.).

{¶ 23} Under R.C. 2907.02(A)(2), force that is "physically exerted by any means," R.C. 2901.01(A)(1), is all that is required. The trier of fact may need to examine "'the age, size and strength of the [offender and victim] and their relation to each other.'" *Eskridge* at 58, quoting *State v. Labus*, 102 Ohio St. 26, 38 (1921). However, we have recognized that only "minimal force" is necessary to support a rape conviction. *Id.*

{¶ 24} Paul argues that the force inherent in the sexual act cannot be considered when making this determination. Paul suggests in his proposition of law that there is a distinction between the force used by the offender to *compel* the victim to submit to sexual conduct and the force used in *performing* the sexual conduct itself. But here, the evidence in the record does not support reviewing this case for such a distinction with respect to force in the context of rape.

### C. The evidence was sufficient to establish force

{¶ 25} The State argues that there was sufficient evidence of force, regardless of the inherent force used by Paul to engage in the sexual conduct. We agree. Satterwhite heard Charles tell Paul, "[N]o, I'm not gonna do it," when Paul asked for sex. Charles testified that he tried to get Paul to stop and that he felt forced to engage in the sexual conduct. The State also presented evidence that Paul was holding Charles's waist and legs and thrusting into him. This evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Paul compelled or constrained Charles in order to engage in sex with Charles without his consent. *See Merriam-Webster's Collegiate Dictionary* (11th Ed. 2003) ("compel" means "to drive or urge forcefully or irresistibly" or "to cause to do or occur by overwhelming pressure"); *id.* ("constrain" means "to force by imposed stricture, restriction, or limitation" or "to clasp tightly"). As for the sufficiency of the evidence for the single count of rape, we find no error.

## III. CONCLUSION

{¶ 26} Because a rational trier of fact could have found beyond a reasonable doubt that Paul used force to compel Charles to submit to sexual conduct, we affirm the judgment of the Twelfth District Court of Appeals.

Judgment affirmed.

————————————

David P. Fornshell, Warren County Prosecuting Attorney, and Kristen Brandt, Assistant Prosecuting Attorney, for appellee.

Dearie, Fischer & Martinson, L.L.C., and John A. Fischer, for appellant.

————————————